**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| ABEL ROJAS RODRIGUEZ, JUAN | § | |
| CARLOS GALAVIZ, GUSTAVO GALLO | § | |
| DURAN, JOSE A. TORRES, ALBERTO | § | |
| TORRES, JOSE L. RODRIGUEZ, SANDRA | § | |
| GUADALUPE PADRON, IGNACIO | § | |
| PADRON, BERNARDINO CARRENA | § | |
| GONZALEZ, ROGELIO ROBLES SAINEZ, | § | |
| MARIA ROBLES SAINEZ, ANGELICA | § | |
| MARIA ROBLES, SANTIAGO RODRIGUEZ, | § | |
| JOSE VENTURA ROBLES, ALICIA | § | |
| TORRES, TERESA MEZA, EFRAIN | § | |
| RODRIGUEZ TOVAR, ANA CARRILLO, | § | |
| ERNESTO DURAN, GUILLERMINA | § | |
| GONZALEZ SANDOVAL, and JUAN | § | |
| ROBLES SAINS | § | |
| | § | |
| Plaintiffs, | § | **C.A. No.: _____** |
| | § | |
| V. | § | |
| | § | |
| TRANSOCEAN LTD., TRANSOCEAN | § | |
| OFFSHORE DEEPWATER DRILLING | § | |
| L.L.C., TRANSOCEAN DEEPWATER, INC., | § | |
| BP EXPLORATION AND PRODUCTION, | § | |
| INC., BP, PLC, BP AMERICA, INC., | § | |
| BP PRODUCTS NORTH AMERICA, INC., | § | |
| HALLIBURTON ENERGY SERVICES, INC., | § | |
| CAMERON INTERNATIONAL | § | |
| CORPORATION a/k/a CAMERON SYSTEMS | § | |
| CORPORATION, ANADARKO E&P | § | JURY TRIAL DEMANDED |
| COMPANY LP, ANADARKO PETROLEUM | § | |
| CORPORATION, MOEX OFFSHORE 2007 | § | |
| L.L.C, and M-I, L.L.C. | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs, ABEL ROJAS RODRIGUEZ, JUAN CARLOS GALAVIZ, GUSTAVO

GALLO DURAN, JOSE A. TORRES, ALBERTO TORRES, JOSE L. RODRIGUEZ,

SANDRA GUADALUPE PADRON, IGNACIO PADRON, BERNARDINO CARRENA GONZALEZ, ROGELIO ROBLES SAINEZ, MARIA ROBLES SAINEZ, ANGELICA MARIA ROBLES, SANTIAGO RODRIGUEZ, JOSE VENTURA ROBLES, ALICIA TORRES, TERESA MEZA, EFRAIN RODRIGUEZ TOVAR, ANA CARRILLO, ERNESTO DURAN, GUILLERMINA GONZALEZ SANDOVAL, and JUAN ROBLES SAINS, bring this action against Defendants TRANSOCEAN LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, L.L.C., TRANSOCEAN DEEPWATER, INC., BP EXPLORATION AND PRODUCTION, INC., BP, PLC, BP AMERICA, INC., BP PRODUCTS NORTH AMERICA, INC., HALLIBURTON ENERGY SERVICES, INC., CAMERON INTERNATIONAL CORPORATION a/k/a CAMERON SYSTEMS CORPORATION, ANADARKO E&P COMPANY LP, ANADARKO PETROLEUM CORPORATION, MOEX OFFSHORE 2007, LLC, and M-I, L.L.C and for cause of action respectfully shows this Honorable Court the following:

## I.
## INTRODUCTION

1.      This is a suit to recover damages suffered by Plaintiffs as a result of the oil spill that resulted from the explosion and fire aboard, and subsequent sinking of the oil rig *Deepwater Horizon* (hereinafter the "*Deepwater Horizon*", the "Vessel" or the "Oil Rig") on April 20, 2010, at approximately 10:00 p.m. central time in the outer Continental Shelf.  At all times material hereto, the *Deepwater Horizon* was conducting drilling activities on the outer continental shelf, off the coast of Louisiana.  Following the sinking of the Oil Rig, an estimated 19,000 barrels per day of crude oil have been leaking from the oil well upon which the *Deepwater Horizon* was performing completion operations, and from the pipe connected to it (i.e. the drill stack).  The fast-moving oil slick is headed towards the Gulf Coast and has already caused detrimental affects

upon the Gulf of Mexico's marine environments, coastal environments and estuarine areas.  It has recently been reported by fishermen that a sheen of oil is about sixty miles east of Galveston Island.

2.      The oil slick spreading across the Gulf of Mexico has had detrimental effects on the Gulf of Mexico and threatens the wetlands, estuaries and national fisheries, shrimping grounds, oyster beds and crab habitats (collectively "commercial fisheries") of the Gulf of Mexico.  The timing of the spill could not be worse in that this is a peak spawning and nesting season for many species of fish, shrimp, oysters, crabs and other marine creatures.  The areas which have been damaged and/or will be damaged by the spill are those areas where Plaintiffs' employers get the seafood that is harvested and/or packed by the companies where Plaintiffs work and earn their livelihood.

## II.
## PARTIES

3.      Plaintiff ABEL ROJAS RODRIGUEZ is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

4.      Plaintiff JUAN CARLOS GALAVIZ is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

5.     Plaintiff GUSTAVO GALLO DURAN is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

6.     Plaintiff JOSE A. TORRES is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

7.     Plaintiff ALBERTO TORRES is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

8.     Plaintiff JOSE L. RODRIGUEZ is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

9.     Plaintiff SANDRA GUADALUPE PADRON is an individual who is a citizen of the Country of Mexico.  Plaintiff earns her livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the

Coastal Zone, and, as a result of the events described above and below, she has suffered damages that are more fully described below.

10.     Plaintiff IGNACIO PADRON is an individual who is a citizen of the Country of Mexico. Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

11.     Plaintiff BERNARDINO CARRENA GONZALEZ is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

12.     Plaintiff ROGELIO ROBLES SAINEZ is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

13.     Plaintiff MARIA ROBLES SAINEZ is an individual who is a citizen of the Country of Mexico.  Plaintiff earns her livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, she has suffered damages that are more fully described below.

14.    Plaintiff ANGELICA MARIA ROBLES is an individual who is a citizen of the Country of Mexico.  Plaintiff earns her livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, she has suffered damages that are more fully described below.

15.    Plaintiff SANTIAGO RODRIGUEZ is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

16.    Plaintiff JOSE VENTURA ROBLES is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

17.    Plaintiff ALICIA TORRES is an individual who is a citizen of the Country of Mexico.  Plaintiff earns her livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, she has suffered damages that are more fully described below.

18.    Plaintiff TERESA MEZA is an individual who is a citizen of the Country of Mexico.  Plaintiff earns her livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a

result of the events described above and below, she has suffered damages that are more fully described below.

19.     Plaintiff EFRAIN RODRIGUEZ TOVAR is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

20.     Plaintiff ANA CARRILLO is an individual who is a citizen of the Country of Mexico. Plaintiff earns her livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, she has suffered damages that are more fully described below.

21.     Plaintiff ERNESTO DURAN is an individual who is a citizen of the Country of Mexico. Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

22.     Plaintiff GUILLERMINA GONZALEZ SANDOVAL is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

23.     Plaintiff JUAN ROBLES SAINS is an individual who is a citizen of the Country of Mexico.  Plaintiff earns his livelihood as an employee of a company that harvests and/or packs shrimp and/or oysters.  This seafood comes from the Gulf of Mexico and the Coastal Zone, and, as a result of the events described above and below, he has suffered damages that are more fully described below.

24.     Defendant TRANSOCEAN LTD. is a foreign company doing business in the State of Texas and within this district.

25.     Defendant TRANSOCEAN OFFSHORE DEEPWATER DRILLING, L.L.C. is a foreign limited liability company doing business in the State of Texas.  It can be served through its registered agent: Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

26.     Defendant TRANSOCEAN DEEPWATER, INC. is a foreign company doing business in the State of Texas and within this district.

27.     Defendant BP EXPLORATION AND PRODUCTION, INC. is a foreign company doing business in the State of Texas.  It can be served through its registered agent: CT Corporation System, 350 North St. Paul St., Dallas, TX 75201-4234.

28.     Defendant BP, PLC is a foreign company doing business in the State of Texas and within this district.

29.     Defendant BP AMERICA, INC. is a foreign corporation doing business in Texas and may be served process by serving its registered agent, CT Corporation System, 350 North St. Paul St., Dallas, TX 75201-4234.

30.     Defendant BP PRODUCTS NORTH AMERICA, INC. is a Maryland corporation doing business in Texas and may be served process by serving its registered agent, Prentice Hall Corporation System, 701 Brazos Street, #1050, Austin, Texas 78701.

31.     Defendant HALLIBURTON ENERGY SERVICES, INC. is a Delaware corporation with its principal place of business in Houston, Harris County, Texas.  It can be served through its registered agent in Texas:  CT Corporation System, 350 N. St. Paul Street, Dallas, Texas  75201.

32.     Defendant CAMERON INTERNATIONAL CORPORATION a/k/a CAMERON SYSTEMS CORPORATION is a Delaware corporation with its principal place of business in Houston, Harris County, Texas.  It can be served through its registered agent in Texas:  CT Corporation System, 350 N. St. Paul Street, Dallas, Texas  75201.

33.     Defendant ANADARKO E&P COMPANY LP is a Delaware limited partnership with its principal place of business in The Woodlands, Montgomery County, Texas.  It can be served through its registered agent in Texas:  CT Corporation System, 350 N. St. Paul Street, Dallas, Texas  75201.

34.     Defendant ANADARKO PETROLEUM CORPORATION is a Delaware corporation with its principal place in this district.  It can be served through its registered agent in Texas:  CT Corporation System, 350 N. St. Paul Street, Dallas, Texas  75201.

35.     Defendant MOEX OFFSHORE 2007, LLC is a Delaware corporation with its principal place of business in Houston, Harris County, Texas.  It can be served through its registered agent in Texas: Naoki Ishii, 9 Greenway Plaza, Suite 1220, Houston, Texas 77046.

36.     Defendant M-I, L.L.C. is a Delaware limited liability company with its principal place of business in Houston, Harris County, Texas.  It can be served through its registered agent: Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

### III.
### JURISDICTION AND VENUE

37.     This Court has jurisdiction over this class action pursuant to (1) 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America,

including the laws of the neighboring states which have been declared, pursuant to 43 U.S.C. §§ 1331 (f)(1) and 1333(a)(2), to be the law of the United States for that portion of the outer Continental Shelf from which the oil spill originated; (2) 43 U.S.C. § 1331(1), which extends exclusive Federal jurisdiction to the outer Continental Shelf; and (3) 28 U.S.C. § 1332 because Plaintiffs are citizens of a foreign state, Defendants are citizens of the United States, and the amount in controversy exceeds $75,000, excluding interest and costs.

38.     The case is properly brought in the Southern District because all of the Defendants do business in the Southern District, several of the defendants maintain their principal place of business in the Southern District and a substantial part of the events or omissions giving rise to the claim occurred in the Southern District.

### IV.
### FACTUAL ALLEGATIONS

39.     Transocean, Ltd., Transocean Offshore and Transocean Deepwater (collectively "Transocean" or "Transocean Defendants") are the owners and/or operators of the *Deepwater Horizon*, a semi-submersible mobile drilling rig, which was performing drilling and completion operations for BP, plc, BP American, Inc. and BP Products North America, Inc. (collectively "BP" or "BP Defendants") on the outer Continental Shelf, at the site from which the oil spill now originates, on April 20, 2010.

40.     The BP Defendants, Anadarko E&P Company LP, Anadarko Petroleum Corporation (collectively "Anadarko" or the "Anadarko Defendants"), and MOEX Offshore 2007, LLC ("MOEX") (all collectively the "Lessee Defendants") are the holders of a lease granted by the Minerals Management Service ("MMS") that allows them to drill for oil and perform oil-production-related operations at the site of the and oil spill, and on April 20, 2010 operated the oil well that is the source of the oil spill.  The BP Defendants are the designator operator of the

lease.  As lessees, the Lessee Defendants, along with Transocean, are jointly and solidarily responsible for all activities of the *Deepwater Horizon* and for all damages and relief requested herein.

41.     Upon information and belief, Halliburton Energy Services, Inc. ("Halliburton") was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion and resulting oil spill.  Problems with cementing operations were identified as factors in 18 of 39 well blowouts in the Gulf of Mexico from 1992 to 2006.

42.     M-I, L.L.C. ("M-I") was, upon information and belief, contracted to provide drilling fluid ("cement") services to the Vessel.  M-I, in conjunction with Halliburton, failed to maintain appropriate drilling fluid weight before and during the cementing operations, thus allowing highly combustible gas to escape from the wall and ignite, thus causing the resulting fire, explosion and oil spill.

43.     Upon information and belief, Cameron International Corporation a/k/a Cameron Systems Corporation ("Cameron") designed, manufactured and/or supplied the *Deepwater Horizon*'s blow-out-preventers ("BOP's") that failed to operate upon the explosion, which should have prevented the oil spill.  The BOP's were defective because they failed to operate as intended and/or because Cameron failed to warn the users that the BOP's would not operate as intended.  As such, Cameron is liable to Plaintiffs under the theory of strict liability under the Texas Products Liability Act in addition to being liable for its negligence.

44.     A study commissioned by the MMS in 2004 singled out Cameron's BOP's for relying on calculations to determine the needed strength of certain components of the BOP's in deep water

conditions, as opposed to actual testing of the components in deep water conditions, finding Cameron used "shear forces lower than required or desired in many cases."

45.    At all times material hereto, the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean and/or BP.

46.    The Board of Directors of Transocean, Ltd. eliminated executive bonuses last year in response to the company's woeful safety records, which includes the deaths of four Transocean workers in 2009.  The Board of Directors took the step of eliminating the bonuses to "underscore the company's commitment to safety" and to give executives an incentive to prevent future accidents.    Eleven Transocean workers died in the explosion on the *Deepwater Horizon*. Transocean has displayed a complete lack of regard for the safety of its workers and all workers aboard its vessels and the safe and proper operation of its drilling rigs, which resulted in the oil spill at issue.

47.    The BP Companies have a history of poor safety and maintenance.  On March 23, 2005, at its Texas City, Texas refinery, explosions killed fifteen workers and injured hundreds as a result of hydrocarbon vapors being discharged from refinery components due to increases in pressure in the components.  The incident was caused by BP personnel not following procedures, supervisory personnel not being present or doing their jobs and using outdated procedures.  In October 2009, BP was fined a record $87.4 million by the Occupational Safety and Health Administration ("OSHA") for failing to correct safety problems related to the March 2005 explosion.  In March 2006 in Prudhoe Bay, Alaska, BP discharged over 250,000 gallons of crude oil from a corroded pipeline it maintained.  With the exception of the *Exxon Valdez* disaster, this was the largest spill in Alaska's history and caused America's largest oil field to shut down.  The spill occurred as a result of BP's lack of maintenance on the pipeline even though, two years

prior to the spill, BP had been advised about corrosion problems in its pipes.  In November 2007, BP was fined $20 million for the discharge pursuant to the Clean Water Act.

48.     In particular, BP Exploration and Production, Inc. has a long list of safety infractions in the Gulf of Mexico.  In the last ten years, this Defendant has been fined by the Minerals Management Service (MMS) at least five times.  These infractions include:

a.     $41,000 fine for a "loss of well control."  MMS found that this Defendant "failed to verify employees were trained to competently perform the assigned well control duties";

b.     $190,000 fine for an improperly installed fire diverter system (this violation was discovered in the wake of a fire that damaged property and the environment);

c.     $80,000 fine for bypassing relays for the Pressure Safety High/Low on four producing wells;

d.     $70,000 fine for low pressure in the fire water system; and

e.     $190,000 fine for BP's rig operator, after it was found that BP's employees, working as contractors, bypassed the safety valves on a rig.  MMS discovered that the rig failed to shut down in an emergency because the safety devices had been bypassed.

49.     The fire and explosion on the *Deepwater Horizon*, its sinking and the resulting oil spill were caused by the negligence of Defendants, which renders them liable jointly, severally and *in-solido* to Plaintiffs for all their damages.

50.     The injuries and damages suffered by Plaintiffs were caused by Defendants' violations of numerous statutes and regulations, including, but not limited to, statutes and regulations issued

by OSHA and the United States Coast Guard, including, but not limited to, the requirement to test the sub-sea BOP's at regular intervals.

51.     Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs, the Gulf Coast's and the Gulf of Mexico's marine and coastal environments and estuarine areas, and the Coastal Zone, where Plaintiffs live, work and exercise recreational privileges conferred by their State of domicile.

52.     The spilled oil would not simply evaporate off of the surface of the water and is causing dangerous environmental contamination of the Gulf of Mexico and its shorelines, threatening The Gulf Coast's sensitive wetlands and estuarine areas and necessitating an order from at least one State adjacent to the Gulf of Mexico suspending fishing, shrimping, oystering and/or crabbing in the waters and adjacent areas affected by the oil spill.  Therefore, the oil spill has caused and will continue to cause Plaintiffs' employers to lose their source of seafood and, therefore, deprive Plaintiffs of their ability to engage in their livelihood.

53.     The oil spill and the contamination have caused and will continue to cause loss of revenue to persons (and businesses), including Plaintiffs, who are being prevented from using the Gulf of Mexico and the Gulf Coast's Coastal Zone for diverse activities, including work and to earn a living.

54.     In addition, the oil spill has caused and will continue to cause loss to Plaintiffs by exposing them to the hazardous and dangerous components of the crude oil escaping from the well and causing serious personal and emotional injuries to Plaintiffs.

55.     There are many other potential affects from the oil spill that have not yet become known, and Plaintiffs reserves the right to amend this Complaint once additional information becomes available.

56.     As a result of the fire and explosion on board the *Deepwater Horizon*, oil from the well is leaking into the Gulf of Mexico at an alarming rate of an estimated 19,000 barrels per day.  Over a month after the explosion, efforts to halt or stem the spill still have not been successful.  A large oil slick resulting from the spill has formed in the Gulf of Mexico and at the time of the filing of this Petition, is moving toward the coast of the State of Texas and throughout the Gulf.

57.     The oil spill and its resultant contamination have caused and will continue to cause a loss of business and revenue to Plaintiffs.

**V.**
**CAUSES OF ACTION**

**A.     NEGLIGENCE AND GROSS NEGLIGENCE**

58.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

59.     Defendants owed a duty of care to Plaintiffs to ensure the safe operation of the Vessel and to avoid the fire, explosion and resulting oil spill that occurred on April 20, 2010.

60.     Defendants known or should have known that the *Deepwater Horizon* presented a serious risk of fire, explosion and spill into the surrounding waters, which could, and, in turn, would cause harm to persons, property and the natural environment.

61.     Defendants knew or should have known that certain equipment utilized by the Oil Rig was defective and not properly functioning.

62.     Defendants knew or should have known that the cement used in the cementing of the well head was defective and/or that the cementing of the well head was not done properly.

63.     Defendants knew or should have known that significant amounts of petroleum were leaking from the *Deepwater Horizon* immediately following the April 20, 2010 fire and explosion.

64.   Defendants owed a duty to Plaintiffs to refrain from action that causes damage to the natural resources, wetlands, waters, commercial fisheries and wildlife of Texas and other Gulf States that Plaintiffs use, enjoy and from which Plaintiffs derive economic and aesthetic benefits.

65.   The fire, explosion and resulting oil spill was caused by the concurrent negligence of the Defendants.

66.   Upon information and belief, Plaintiffs aver that the incidents described above were caused by the joint negligence, fault, gross negligence and/or willful misconduct of the Defendants, or their agents, servants and employees, and are more particularly described below as follows:

a.   Failing to properly and safely operate the *Deepwater Horizon*;

b.   Operating the *Deepwater Horizon* in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

c.   Failing to properly inspect the *Deepwater Horizon* to assure that its equipment and personnel were fit for their intended purpose;

d.   Failing to properly and safely maintain the *Deepwater Horizon* and its equipment;

e.   Failing to take adequate precautionary measures to prevent fires, explosions and oil spills;

f.   Acting in a careless and negligent manner without due regard for the safety of others;

g.   Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the *Deepwater Horizon* which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

h.      Operating the *Deepwater Horizon* with untrained and unlicensed personnel;

i.      Inadequate and negligent training and hiring of personnel;

j.      Failing to take appropriate action to avoid or mitigate the accident;

k.      Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

l.      Employing untrained or poorly trained employees and failing to properly train their employees;

m.      Failing to ascertain that the *Deepwater Horizon* and its equipment were free from defects and/or in proper working order;

n.      Failing to timely warn;

o.      Failing to timely bring the oil release under control;

p.      Failing to provide appropriate accident prevent equipment;

q.      Failing to observe and read gauges that would have indicated excessive pressures in the well;

r.      Failing to react to danger signs;

s.      Providing BOP's or blowout valves that did not work properly;

t.      Failing to properly design, manufacture and install the blowout valve or BOP's;

u.      Failing to employ an acoustic switch in the blowout valve or BOP's;

v.      Failing to ensure that the blowout valve or blowout prevent was functioning properly and as intended;

w.      Conducting well and well cap cementing operations improperly;

x.      Failing to ensure that the concrete casing was sufficient for sealing the well;

y.      Failing to properly cement the well head and final production casing string;

z.     Failing to provide all reasonable cooperation and assistance request by the responsible officials in connection with the clean-up and removal activities;

aa.     Failing to properly report and/or maintain records, and/or the intentional manipulation and fabrication of equipment and/or crew inspections that were a substantial contributing factor to the explosion and resulting damages;

bb.     Acting in a manner that justifies imposition of punitive damages; and

cc.     Such other acts of negligence and omissions as will be shown at the trial of this matter; all of which acts are in violation of state and Federal law applicable on the Outer Continental Shelf.

67.     Defendants had a duty to conform their conduct in such a manner as to assure that a fire, explosion and sinking of the *Deepwater Horizon*, and the resulting oil spill, would not occur, pursuant to federal law, Texas law and the laws of the other affected states.

68.     Defendants failed to conform their conduct to the appropriate legal standard, thereby breaching their duty to conform their conduct in such a manner as to assure that a fire, explosion and sinking of the Oil Rig, and resulting oil spill, would not occur pursuant to federal law, Texas law and the laws of the other affected states.

69.     Defendants substandard conduct in failing to prevent the fire, explosion and sinking of the Vessel, and resulting oil spill, would not occur pursuant to federal law, Texas law and the laws of the other affected states was the cause-in-fact of the injuries, harm and damages suffered by Plaintiffs.

70.     As a direct and proximate result of Defendants' negligence conduct, Defendants have caused or will cause Plaintiffs to suffer and continue to suffer financial and economic loss, personal and emotional injuries, and any other damages allowed under applicable laws.

71.     In addition, and in the alternative, the fire, explosion, sinking and resulting oil spill were caused by defective equipment, including the BOP's, which were in the care, custody, and control of Defendants and over which the Defendants had *garde*.  Defendants knew or should have known of these defects and Defendants are, therefore, liable for them.

72.     The injuries to Plaintiffs were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

73.     Defendants were aware at all times relevant hereto that their operations and the acts and/or omissions described above created an unreasonable risk of harm and knew that the catastrophic environmental destruction and economic loss would occur if the well being serviced by the Oil Rig were to blow out.  Defendants were indifferent to this risk of harm.  Defendants intentionally, or with gross negligence, failed to perform the duties owed to Plaintiffs in reckless disregard to the consequences that their actions and/or omissions would have on Plaintiffs. Moreover, Defendants acted with knowledge that their acts would probably result in injury or in such a way as to allow an inference of reckless disregard to the probable consequences of their acts.   Therefore, Defendants are also liable to Plaintiffs for gross negligence and/or willful misconduct.  The oil spill that is damaging the Coastal Zone and the Gulf of Mexico off the Texas and other proximal states was proximately caused by Defendants' gross negligence and/or willful misconduct.

74.     Further, upon information and belief, the oil spill was proximately caused by the Defendants' violation of applicable federal and state safety, construction, and/or operating regulations and/or by violations of such regulations by an agent, servant or employee of Defendants and/or a person acting pursuant to a contractual relationship with Defendants.

75.     Plaintiffs also specifically plead the doctrine of *Res Ipsa Loquitor*.

76.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, the natural resources, water, wetlands, commercial fisheries and wildlife of coastal Texas and the other Gulf States have been, and will continue to be, damaged by the intrusion of oil into the Gulf Coastal Zone and the Gulf of Mexico.  As a result, Plaintiffs have suffered a loss of their right to use, enjoy and derive economic and aesthetic benefits from natural resources, wetlands, waters, commercial fisheries and wildlife of Texas, and the other affected Gulf Coast states. Further, Plaintiffs have suffered, and will continue to suffer, loss of income, property damage and loss, other economic loss, physical injury and emotional distress.  The Defendants are liable jointly and solidarily for Plaintiffs' damages resulting from Defendant's negligence.

77.     Due to Defendants' negligence, Plaintiffs have suffered, and continue to suffer from, a loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property and/or personal property.  Plaintiffs are entitled to a judgment finding Defendants liable to Plaintiffs for damages suffered as a result of Defendants' negligence and awarding Plaintiffs adequate compensation therefore in amounts determined by the trier of fact.

**B.     STRICT LIABILITY**

78.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

79.     Defendants' drilling of highly volatile and toxic fuel constitutes an abnormally or ultrahazardous activity.

80.     Defendants' drilling of highly volatile and toxic fuel within a relatively short distance from the shoreline inherently presents a high degree of risk and likelihood of substantial harm to persons, land and property.

81.     Due to the nature of Defendants' activity, the associated high risks could not have been eliminated through the exercise of reasonable; therefore, Defendants are strictly liable to Plaintiffs.

## C.     TEXAS PRODUCTS LIABILITY ACT

82.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

83.     Plaintiffs bring claims against Cameron under the Texas Products Liability Act (TEX. CIV. PRAC. & REM. CODE § 82.001, *et seq.*). Cameron designed, manufactured and/or supplied the defective BOP's or blowout valve(s) that were used on the Oil Rig and failed to operate as intended.  Plaintiffs allege that these BOP's or blowout valve(s) were defective as manufactured and/or designed and these defects legally caused the explosion, fire and resulting oil spill. Further, Cameron failed to warn the other Defendants that these BOP's or blowout valve(s) would not work as intended.  Additionally, the BOP's or blowout valve(s) that were in place on the Vessel failed to comply with an express warranty which induced the other Defendants to use the product and proximately caused the harm to Plaintiffs because the express warranty was untrue.

84.     As a result of the oil spill, Plaintiffs have suffered the type of damages that may be recovered under the Texas Product Liability Act and any other applicable law, and demand compensation therefore from Cameron in amounts to be determined by the trier of fact.

## D.     PRIVATE NUISANCE

85.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

86.     Defendants' acts and omissions with respect the fire, explosion and release of crude oil and other toxic substances have caused and continue to cause a material, substantial and unreasonable interested with Plaintiffs' use and enjoyment of their property and business and has materially diminished and will continue to diminish the value thereof.

87.     Defendants' material, substantial and unreasonable interference with the use and enjoyment of Plaintiffs' property and business, and the continuing material, substantial and unreasonable interference with such use and enjoyment constitutes a private nuisance.

88.     Defendant's creation and continuing creation of private nuisance proximately caused and continues to cause damage to Plaintiffs in the form of loss of income, loss of business, emotional distress and/or property damage.

**E.    PUBLIC NUISANCE**

89.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

90.     Defendants have created a public nuisance through the discharge of oil into the Gulf of Mexico by unreasonably interfering with the use by the public of a public place and public waters and have endangered or injured the property of a considerable number of people in the State of Texas and the other Gulf Coast States.  Plaintiffs derive their livelihood and income from areas in the Gulf Coastal Zone that have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of the interference.  Defendants are jointly and severally liable to Plaintiffs for creating a public nuisance and the resulting harm and are therefore liable for compensatory damages.

F.    **BREACH OF CONTRACT**

91.    Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

92.    Upon information and belief, the lease (and other agreements) granted by the MMS to the Lessee Defendants contains implied and/or express provisions that (1) makes the Lessee Defendants responsible for all oil spill removal costs and damages that occur during the term of the lease and (2) require the Lessee Defendants to maintain all operations within the leased area in compliance with regulations or orders intended to protect persons, property and the environment of the Outer Continental Shelf.  Plaintiffs are a third party beneficiary to the lease and any other agreement between MMS and Lessee Defendants.

93.    The oil spill occurred while the Lessee Defendants and/or entities under the control or supervision were performing drilling operations pursuant to the lease granted by the MMS.

94.    The Lessee Defendants failed to maintain their operations in compliance with regulations and orders intended to protect persons, property and the environment on the Outer Continental Shelf and are liable for all oil-spill removal costs and damages that have resulted.

95.    As a direct result of the Defendants' breach of the lease, the natural resources, waters, wetlands, commercial fisheries and wildlife of the Gulf of Mexico, including the coasts of Texas and the other Gulf Coast States, have been and/or will continue to be damaged by the intrusion of oil into the Coastal Zone and the Gulf of Mexico.  As a result, Plaintiffs have suffered a loss of their right to use, enjoy and derive income and aesthetic benefits from the natural resources, wetlands, waters, wetlands, commercial fisheries and wildlife of the Gulf of Mexico and Texas and the other Gulf Coast States.  Specifically, Plaintiffs' employers are no longer able to acquire the seafood they need to operate their companies as a result of the toxic effects of the discharged

oil on the flora and fauna of the Coastal Zone, the surrounding waters and wetlands and the Gulf of Mexico.   As a direct and proximate result of the Lessee Defendants' breach of the lease, Plaintiffs have suffered and will continue to suffer loss of income, other economic loss and emotional distress.   Lessee Defendants and jointly and solidarily responsible for Plaintiffs' damages resulting from the Lessee Defendants' breach.

**G.     OIL POLLUTION ACT**

96.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

97.     The Oil Pollution Act (33 U.S.C. § 2701, *et seq*.) imposes liability upon a "responsible party for a ... facility from which oil is discharged...into or upon navigable waters or adjoining shorelines" for the "damages that result from such incident."   33 U.S.C. § 2702.

98.     Section 2702(b)(2)(E) provides for the recovery of "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

99.     The Coast Guard has already named BP as the responsible party.   Therefore, BP is liable pursuant to Section 2702 for all the damages that result from the oil spill.

100.     As a result of the oil spill, Plaintiffs have suffered the type of damages that may be recovered pursuant to Section 2702(b)(2)(E), and they demand compensation therefore from BP, and any other Defendant that is determined to be a responsible party, in amounts to be determined by the trier of fact.

**H.     PUNITIVE DAMAGES**

101.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

102.    Plaintiffs would also show that Defendants acted willfully, wantonly, maliciously recklessly, and with gross negligence when they breached the duties owed Plaintiffs. Accordingly, Plaintiffs also seeks an award of PUNITIVE damages.

**VI.**
**PRAYER FOR RELIEF**

103.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally and *in solido*, as follows:

a.    Economic and compensatory damages in amounts to be determined at trial;

b.    Punitive damages;

c.    Pre-judgment and post-judgment interest at the maximum rate allowable by law;

d.    Attorneys' fees and costs of litigation;

e.    Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate; and

f.    A trial by jury as to all Defendants.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

*/s/ Anthony G. Buzbee*
Anthony G. Buzbee
State Bar No. 24001820
JPMorgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone:     713-223-5393
Facsimile:      713-223-5909
Email:  tbuzbee@txattorneys.com

**ATTORNEY FOR PLAINTIFFS**